The next case today is United States v. Carlos Guzman-Merced, appeal number 182146. Ms. Shevitz, whenever you're ready. Thank you. I would like to reserve one minute for rebuttal if that's okay. Yes. Okay. In this case, it's our submission that the plain error that requires noticing the error. In this case, unlike any other I've seen in all my research, there is no evidence that Carlos Guzman-Merced served a year previously or therefore knew that he was a prior felon. The trial judge, in fact, got this confused throughout and asked about a prior federal case or prior other cases. And in fact, according to the undisputed record, the PSR, Mr. Guzman-Merced did not serve a year in jail. And in fact, his only prior sentence was suspended. So when Mr. Justice Alito in Rahafe says that jurors will rarely doubt that a defendant convicted of felony has forgotten that experience. In fact, this appellant did not have that experience. This distinguishes this case from all the others where the government claims and rightfully so usually that on the record or on the ultra record, it could prove that the defendant was a prior felon and knew it. Well, he was convicted of a felony. He was convicted of a prior felony, but he did not know that he was a prior felon. So if the rule were that all you have to do is be a prior felon, then yes, this conviction would have to be sustained. But Rahafe said that's not the law. Rahafe said that a convicted felon has to know there has to be evidence or an admission that he knew he was a prior felon. And while a defendant who serves a year or who has an extended record of felonies, there is good basis to conclude that that defendant knew he was a prior felon. In this case, there's nothing but the elements that Rahafe said were insufficient to sustain the charge. But counsel, he was previously sentenced, if I'm recalling, to three one-year sentences, even if all of that was suspended. I certainly sort of understand your argument that perhaps this is a closer case than perhaps some of the others. But doesn't that matter? I mean, isn't there some suggestion here where he's sentenced to multiple year sentences, even if they're suspended, that he would have noticed that he was a felon? I doubt that. I don't think there's any evidence to support that conclusion. If they were all imposed at the same time, and if he didn't serve the time, and if the state said that it wasn't important enough for him to serve the time, and here's a young man with learning disabilities, so there's no evidence that he necessarily knew what was going on. There is no evidence sufficient to prove this element. The government can say, well, he was a felon, but that's all they can say, and that's all they've done. Can't and didn't the government also say that in the prior sentencing, there was an obligation on the part of the state sentencing judge to inform him of what he was exposed to, and that you would bear the burden of showing proof that he was not given those warnings, given the presumptions of regularity and proceedings? What do you say to that? I say that if that suffices for proof, then we are in a really sad business here, because the speculation that the judge was supposed to say, you are now a felon, and you are subject to such and such penalty, suffices to show that the defendant knew he was a prior felon, then we're down to no evidence at all. Let's be clear. There's some overstatement in your argument that may hide some strength of your argument. He doesn't need to know he was a felon. He needs to know that he was convicted of a crime that was punishable by more than a year in jail. Okay. That's all the government would have to prove. In Burkhart, we noticed that one indicia of evidence that he wouldn't have that knowledge is the presumption that in accepting a plea, as we know the court did in his prior proceedings, generally courts are required to tell someone what the maximum penalty is for the crime that they're pleading to. In Burkhart, where we had other stuff, we noted that that was a strong indication and that it put some obligation on the defendant to come forward and showed that there'd been some aberration from the presumed normal practice. Here, you do still have that factor cutting against you. We know he pleaded to a crime that was punishable by more than a year in jail, in fact, several of them. We suspect that the state court, the Commonwealth judge told him what the sentence was. I think what you then have to say is notwithstanding that we have that common fact with Burkhart, there are other differences from Burkhart that mean we should not give dispositive weight to that fact. That's what I was hoping to hear about, not hearing that he needed to know he was a felon. Well, your honor just stated that he suspected, that you used the word suspect to describe the level of proof here. I said that we strongly suspected in Burkhart that someone who's pleaded guilty to a crime punishable by several years was told by the judge as required that he was sentenced to a crime that was punishable. I think that's very speculative. I think that once the defendant satisfies his burden here, the burden of going forward, I suggest, to show that there was no prior felony sentence. You're a criminal, you do criminal defense work, I assume. I do. Have you ever been to an acceptance of plea hearing where the judge didn't tell the defendant what his I practice in federal court. I do not know what the state courts do. Frankly, although I have seen in state courts, there is some sloppiness. And so I can't say what the Puerto Rico state courts did. The prior felony here was a state felony, and it would involve possession of a weapon, not shooting the weapon. So I can say what might have happened. I can say what is usually supposed to happen. But that is not necessarily what happened. And I think it does not overcome the defendant showing here, our showing that he did not serve any year incarceration, and that nothing about that gave him the knowledge that he was a prior felon, sufficient for rehave purposes. How are we to deal with the, he got, I believe, a three-level reduction for acceptance of responsibility. Yes. If he had not pleaded guilty and had gone to trial and be convicted, he would not have had that three-level reduction. Correct. So can you assure us that you have clearly and firmly advised your client that if he succeeds on this appeal, he could end up getting a longer sentence? Have I told him that? It's very hard to communicate with him where he is. I do know that he has communicated with me that now that this judge has told him what's what for the first time, because you'd never had the warnings before, he's duly chastened and would have been chastened by a guideline sentence of 41 to 51 months instead of the variant sentence of 72 months. So I think that even if your honors are not inclined to rule that the rehave error raises an error that the court should notice, the court should say, should rule that there is no basis for a variant sentencing here. The court, as discussed in our brief starting at page 22, the court was very confused, frankly, about what the prior sentences were and what the prior had abandoned school. And in fact, that was not true. The defendant was punished, but he wasn't punished by being in jail for a year. He wasn't there. So while the district court here chastened the defendant and said, you know, if you have a third felony here, it's going to be really bad. That never happened before to this man. So I can tell you for sure that I don't think there's any basis for a more severe sentence if he goes back to the district court. Well, my question wasn't how you'd argue before. Do you agree that if we vacate and send down for resentencing, he wouldn't get the three level enhancement if he's convicted after trial? His GSR would therefore be higher. Yes. And in theory, he could get a longer sentence than the sentence he got. In theory, that is true. And it's always true in this appellate criminal appeals. So I go back to my question. Are you telling us you can't assure us that he knows that? I'm pretty sure he knows that. He really was very dubious. He wasn't sure he wanted to appeal. Yes, he knows that. He knows that. But he also knows that he was sentenced for too long here. On a guideline sentence of 41 to 51 months, he was given 72 months. All the factors were taken into account for the guidelines that it was a gun, that he shot, that he had a criminal history. And there really was no real basis except the deterrence of Puerto Rico gun violence for sentencing this man to 72 months. So while he knows... Was the shooting of the gun actually accounted for in the base offense level? I understand that the nature of the firearm was accounted for, but I'm not sure. And what do you point to in the guidelines that suggest the shooting into the barbershop was accounted for? Well, the brandished or fired is the guideline enhancement. So he did get extra points for that. And yes, he shot. That's why he pled guilty. He pled guilty because he did the crime. And whether he shot five times or 10 times, it was bad. And the judge went back to, yes, but he shouldn't have had the gun. Absolutely correct. He should not have had the gun. And he should not have gone to the barber shop. He should not have done all that. But we have to ask, what's the proper sentence for that? And the sentencing guidelines say what the proper sentence for that is. It's 41 to 51 months on this record. Counsel, you've reserved some time, and we'll hear from Mr. Bornstein now. Thank you. Should I mute my... I guess I should... Yes, please. Okay. Chief Judge Howard? Yes, whenever you're ready. Chief Judge Howard, and may it please the court, David Bornstein on behalf of the United States. This appeal presents three assignments of error, none of which can succeed. The first two are in which the court held first that a ruhaith error in an indictment is a non-jurisdictional defect that is waived upon pleading guilty, which is precisely what happened here. And second, that a ruhaith error in a Rule 11 proceeding is reviewed for plain error where there was no objection below, which again is what occurred here. And the appellant, Mr. Guzman, cannot succeed under plain error review because he never argues plain error in his opening brief. In his reply brief, he does not argue the fourth prong of plain error. He never explains why his Rule 11 proceeding, which was perfectly appropriate under the law at the time, seriously impugns the fairness, integrity, or reputation of the judicial proceeding. Moreover, when it comes to prong three of plain error review, Mr. Guzman never says that had he known of the ruhaith error, he would not have pled guilty. He never says that he did not know that he was not convicted of an offense previously that was susceptible of a punishment of over one year. Instead, he simply argues that he believes the government would not have been able to prove it. However, he has not borne his burden of showing that. And indeed... And counsel, wouldn't you agree that in this case, the petitioner has a stronger argument that the given that unlike Burkhardt, he never served any sentence and that the prior sentence that was a multi-year sentence was suspended? What do you say to that? Well, Your Honor, so no. And the reason why is because had we gone to trial, we would have shown that Mr. Guzman pled guilty to both an article 251 offense and an offense under article 5.04 Puerto Rico's weapons act, both of which were fourth degree felonies, both of which were punishable by a term of imprisonment of up to three years. And under Puerto Rico rule of criminal procedure 70, the Puerto Rico trial court was obligated to inform Mr. Guzman of the consequences of his guilty plea before accepting it. And under the Supreme Court's, the Puerto Rico Supreme Court's decision in 1973 in Diaz, that meant that the trial court had to inform Mr. Guzman of his maximum possible authorized sentence by pleading guilty. And in Burkhardt, this court was very clear that when there is a state law obligation of a trial court to inform a defendant of the inference that the trial court did indeed comply with that obligation and that the burden is thus on Mr. Guzman to prove otherwise. Well, we never said that. We never said that inference by itself was sufficient for the government to prevail. We listed that as one of many, one of many factors we considered in establishing that the defendant had not shown a reasonable probability that he would have pled guilty. Here you've got lots of differences. He was 17 years old at the time. He's got a sixth grade education. He got a suspended sentence, never served a day. It's five years later. Certainly a better record than in Burkhardt to argue that there's some reasonable probability that he didn't know that he'd committed a crime that was punishable by more than a year. Well, your honor, I do not believe that his being 17 years old, I believe is 18 at the time of conviction or the fact that he only had a sixth grade education would have prevented him from understanding that when the judge told him you can receive up to three years of imprisonment on this guilty plea that he would have understood that he could have received up to three years of imprisonment on that guilty plea. And that he would have remembered that five years later. Yes, your honor, that he would have remembered it five years later, but this court was not alone in Burkhardt in finding that state court practice can be sufficient grounds to conclude that the government could have borne its burden at trial. Well, when you say we weren't alone in holding that, we didn't hold that at all. Well, your honor, we didn't say it was sufficient. Well, it was part of this court's analysis, and I think the analysis carries through here. The Fifth Circuit in second circuit in Bryant, the 11th circuit in pain, no, sorry, in Thomas and the seventh circuit in pain are all courts that have similarly looked at state court practices and held that when there is a state court practice of informing a defendant of the maximum possible sentence he can receive on pleading guilty, that creates a strong inference that he was indeed so informed and thus that the government could prove circumstantially that he knew of his status as a felon. But your honor, you, Judge Coyote, you said that the government may not have been able to bear its burden here, but the burden is on the appellant. The burden is on Mr. Guzman to prove that the government would not have been able to show the Ruhaith element, the knowledge of status element at trial. And again, I want to reiterate, Mr. Guzman has never alleged in his briefing before this court that he did not know of his status as a convicted felon. This is just wrong. The burden is not on him to prove that you couldn't have proved at court. The burden is on him to show there's a reasonable probability that he would have pled differently, would have pled innocent. And we look at a whole range of factors. One of them is the fact that in Burkhart there was overwhelming evidence that was obvious to everyone that the government could have proved it. So that presumably would have entered into his calculus. Here there's a lesser, there's lesser evidence. Doesn't necessarily mean it's insufficient, but it's lesser. So Burkhart doesn't quite control. Well, your honor, again, I believe in Burkhart this, this court was rather clear that if you believe the record would not show, the state court record would not, would show that he was not informed of his maximum penalty. The burden was on him to produce those elements. Yes, you're absolutely correct that on that one factor, if he wants to say normal practice wasn't followed, then he may need to do something. But I think where you're jumping off is finding that the failure to do that means that one factor is dispositive in showing that five years later he knew. Well, I believe what is dispositive here is again, he has never argued for the fourth prong of plain error review. And under Severino Pacheco, that is conclusive. He has thereby waived plain error review. I would also point out that his argument for plain error review is belated. He did not raise it in his opening brief, but only in his reply brief, precluding the government from responding, except for here at oral argument. And finally, when it comes to the third prong of plain error review, I really do want to reiterate, if you read through his briefs, Mr. Guzman never says that he would not have pleaded guilty. He does not allege that even. He simply says that he now believes that the government would not have been able to prove his knowledge through circumstantial evidence, and that he now wants to force the government to prove it at trial. But he never goes back to when he pleaded guilty and says, had I known this, I would not have pleaded guilty. So I simply think he cannot prevail under plain error review. And if I may turn to the sentencing issue here, Mr. Guzman also challenges the procedural and substantive reasonableness of his 72-month upwardly variant sentence. I would point out that in his brief, his primary contention is that the district court put too much emphasis on community factors and not enough emphasis on individual factors. Under this court's decision in Flores-Machiote, that is a claim of procedural unreasonableness. For the sentencing court, however, Mr. Guzman only made a generic objection to the procedural unreasonableness of the sentence. He did not specify this particular assignment of error. Therefore, it must be reviewed for plain error. And again, he does not argue plain error as to this claim. In any event, I think it is noteworthy that over a 61-page sentencing transcript, the sentencing court only once referred to community-based factors. And it was only after Mr. Guzman complained about the sentence he had received. And the court said it was sentencing him because this was his third serious conviction in six years, and also that Puerto Rico had a number of similar cases involving young men with guns. And I think this flowed into the court's fundamental rationale of deterrence, needing to deter Mr. Guzman from future offenses. Now, I'd point out, Your Honor, two things. First, Mr. Guzman's own attorney admitted that the record is clear that Mr. Guzman has becoming progressively worse. He has gone from at age 16, merely possessing a handgun, to age 17, possessing two handguns, and then aiding and abetting an individual driving a car into police officers. And then now at age 22, carrying a handgun in public with an extended magazine, and opening fire in public. His attorney conceded at sentencing that Mr. Guzman shot about 12 shots in broad daylight on a public street. And moreover, both the prosecution and the sentencing looked at two videos that were taken in defense, running and firing blindly behind him. Excuse me, if I may? Yes. Attorney Bornstein, you did break up for a second there. You may want to repeat your last couple of sentences. Yes, I'm sorry about that. Let me try to get closer to the microphone. We can hear you now, and where you left off was when you were starting to talk about the videos. So just wrap up in 15 seconds, please. Yes, Your Honor. So the key thing is that sentencing, both parties relied on the videos. The district court looked at the videos. And the key thing is what took this case out of the heartland of cases of mere gun possession is that he didn't merely possess the gun. He fired it at least 12 times in broad daylight, creating a substantial risk of serious injury and death, as the court specifically found. And there was no accounting for that in the guideline calculation. The four-level enhancement he received under Section 2K2.1b6 was merely for possessing the firearm in connection with another offense. But the fact that that offense was very violent, very dangerous, and created a risk of death was not taken into account And finally, I would like to point out that having both parties urge the district court to base its sentence on the video and having the district court spend a lot of time on the video at sentencing, we simply believe that Mr. Guzman cannot succeed in his sentencing challenge when he has not provided that video as part of the record on appeal for this court to look at. And he doesn't even address the court's reliance on the video and the fact that his progressively worse behavior required further deterrence. So for these reasons, Your Honor, we ask that you affirm the sentencing conviction. Ms. Shevitz. Yes. Two things. Both parties did not rely on that video below. The defendant was forced to talk about the video because the prosecution brought up the video at sentencing multiple times. So the defense never relied on the video. He committed the crime and he should be punished for the crime, but not for something that everybody else did. As to defendant did not say that he would not have pled guilty. Well, we're in a strange procedural posture because this is not a 2255 nor a motion to withdraw the plea. This is an appeal. So what we say is there is insufficient evidence here to substantiate the plea. And the error, the rehafe error should be noticed. There was not sufficient evidence to sustain the notion that he knew he was a prior felon. He very likely is innocent of this federal offense. Uh, and there is no evidence sufficient to bring the sentence into a variant sentence instead of sentencing this man who was never treated and never punished in jail before he should have gotten the guideline sentence. There's no basis for a variant sentence. Thank you. Thank you very much. Thank you, counsel. Okay. That concludes argument in this case, attorney Shevitz and attorney Bornstein. You should disconnect from the hearing at this time. Thank you. Thank you.